# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6828 | **DATE** | 8/31/2001 |
| **CASE TITLE** | Mutual Assignment and Indemnification Co. v. Lind-Waldock & Co. LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Court GRANTS Lind-Waldock's motion to dismiss [#19-1] as to Count I (Action to Perpetuate Testimony), Count II (Breach of Fiduciary Duty) and Count V (Recission), but DENIES the motion as to Counts III (Conversion), Count IV (Breach of Contract), and Count VI (Commodity Exchange Act).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 10 2001 | |
| | Notified counsel by telephone. | | date docketed | 29 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 10 AM 11:06 | | |
| mrl | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| Mutual Assignment and Indemnification Company and Paul Lee, | |
| Plaintiffs, | |
| v. | No. 99 C 6828 |
| Lind-Waldock & Company, LLC, | The Hon. David H. Coar |
| Defendants, | |

**DOCKETED SEP 1 0 2001**

## MEMORANDUM OPINION AND ORDER

Mutual Assignment and Indemnification Company, as the purported assignee of Paul Lee's rights, and Paul Lee, purportedly on his own behalf, sued Lind-Waldock & Company for wrongfully liquidating certain positions that he had in the futures market. They sued Lind-Waldock for breach of fiduciary duty, conversion, breach of contract, recission, and for violating the Commodity Exchange Act, 7 U.S.C. § 1 et seq. They also sued to "perpetuate to testimony" related to these claims. As to all of these claims, Lind-Waldock says that the complaint fails to state a claim upon which relief can be granted. As to the fraud-based claims, it says that the complaint fails to allege fraud with particularity. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Lind-Waldock's motion.

### Background

The facts of this case are straightforward. Lee had an account with Lind-Waldock involving futures contracts. A July 5, 1997, customer agreement governed their relationship. That agreement gave Lind-Waldock the right to determine the margin requirements on Lee's account and to change the margin amount whenever it deemed it advisable. It gave Lee a reasonable time – defined as one

hour – to meet any margin call. But the customer agreement also gave Lind-Waldock the right to liquidate Lee's positions under certain circumstances. Specifically, paragraph 5 of the customer agreement says:

> **5 LIQUIDATION OF POSITIONS.** CUSTOMER FURTHER AGREES THAT, NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, IN THE EVENT THAT THE ACCOUNT HAS ZERO (0) EQUITY OR IS IN DEFICIT AT ANY TIME, OR IN THE EVENT THAT BROKER IS UNABLE TO CONTACT CUSTOMER DUE TO CUSTOMER UNAVAILABILITY OR DUE TO UNFORESEEABLE BREAKDOWN IN ELECTRONIC COMMUNICATIONS, BROKER SHALL HAVE THE RIGHT TO LIQUIDATE ALL OR ANY PART OF CUSTOMER'S POSITIONS AT THE MARKET PRICE THEN TRADING, WITHOUT PRIOR NOTICE TO THE CUSTOMER. Further, whenever broker deems it necessary or advisable for Broker's protection, Broker is authorized, at its sole discretion and without prior notice to Customer, to liquidate any positions in the account and to sell any collateral deposited with Broker. Broker is authorized to offset Customer's position(s) in any manner it deems appropriate, and on any exchange or other market where such business is transacted, including an Exchange for Physicals (EFP) transaction. In the event that liquidation of positions is required by Broker, Broker is authorized to effectuate a switch transaction on behalf of Customer.

On October 27, 1997, Lind-Waldock liquidated several contracts in Lee's accounts. Although it is somewhat difficult to tell from Lee's complaint, it appears that someone who worked for Lind-Waldock informed Lee of a $7,000 margin call and said that he would wait to hear back from Lee. It is not clear, though, whether Lee received this call on the 27th or sometime after Lind-Waldock liquidated Lee's contracts.[1] Lee complained to Lind-Waldock that it had improperly liquidated his contracts. He apparently was not satisfied with Lind-Waldock's response to his complaints and filed this lawsuit. He then purported to assign his rights under the contract to Mutual Assignment. Both he and Mutual Assignment are identified as plaintiffs in this case.

---

[1] Lee's complaint says, on the one hand that he was told of the margin call, but then alleges that he did not receive any "formal" margin call. For purposes of this motion, the Court assumes that Lind-Waldock did not call Lee to inform him of the margin call.

2

## Analysis

A complaint fails to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The plaintiff gets the benefit of the doubt with ambiguities and inferences. Also, the Court treats well-pleaded facts as true for purposes of the motion. See, e.g., Chu v. Sabratek Corp., 100 F. Supp. 2d 815, 819 (N.D. Ill. 2000) (citations omitted). Although notice pleading is the general rule, plaintiffs must plead "with particularity" the circumstances constituting fraud. See Fed. R. Civ. P. 9(b). In Seventh Circuit vernacular, this means that plaintiffs must plead facts related to the "who, what, when, where, how" of the fraud. See DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1996). A plaintiff, though, may plead generally the defendants' state of mind. See Fed. R. Civ. P. 9(b) ("[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally.").

### Count I - Action to Perpetuate Testimony

Lee purports to bring an action to perpetuate testimony, which he thinks is implied by the text of Rule 27. See Fed. R. Civ. P. 27 ("This rule does not limit the power of a court to entertain an action to perpetuate testimony."). That would be a perfectly legitimate pursuit if it were the middle of the last century. What Lee fails to note, though through no fault of his own given the express language of the rule, is that the action to which Rule 27 refers was statutorily created and then repealed in 1948. See Charles A. Wright & Richard L. Marcus, 8 Federal Practice & Procedure 2d, § 2071 n.9 and accompanying text. In the absence of a statutorily-created cause of action, Lee's Count I must be dismissed.

Lee has disclaimed reliance on Rule 27. But even if he didn't, relief on that basis would be inappropriate because Lee essentially wants pre-filing discovery. This is not the purpose of the rule.

3

Rule 27 enables parties to perpetuate, not fish for testimony and evidence. See, e.g., In re Banks, No. 93 C 6914, 1993 WL 502379, at *1-2 (N.D. Ill. Dec. 6, 1993) ("Rule 27 may not be used as a substitute for discovery to determine if a cause of action exists.") (citations omitted). Since Lee has not properly invoked any authority for such an action, Count I is dismissed.

## Count II - Breach of Fiduciary Duty

In Count II, Lee alleges that Lind-Waldock violated a fiduciary duty owed to him. To state a claim for breach of fiduciary duty under Illinois law, plaintiffs must allege: (1) the existence of a fiduciary duty; (2) defendant's breach of that duty; and (3) damages proximately caused by the breach. See, e.g., Neade v. Portes, 739 N.E.2d 496, 502 (Ill. 2000). Commodity brokers do not owe fiduciary duties to their clients unless they have discretion to purchase and sell their customer's assets. See, e.g., CFTC v. Heritage Capital Advisory Servs., Ltd., 823 F.2d 171, 173 (7th Cir. 1987).

Lee has done nothing more than allege that Lind-Waldock breached duties set forth in the contract. For example, Lee admits that he and Lind-Waldock "entered into a contract wherein Lind[-Waldock] agreed to perform and execute transactions approved by Lee." Amend. Compl. ¶ 27. In the very next paragraph, though, he says that this duty – "to execute and carry out transactions ordered by Lee" – was created by their "fiduciary relations." See Amend. Compl. ¶ 28. The other duties that Lee identifies are not born outside the terms of the contract. See, e.g., Amend. Compl. ¶ 28 (duty not to liquidate unless the account had no equity); id at ¶ 32 (duty to give Lee one hour to meet a margin call). At bottom, though, Lee has not alleged that Lind-Waldock had discretion to buy and sell on Lee's account. As alleged, Lind-Waldock did not owe Lee a general fiduciary duty of care. Consequently, the Court dismisses Count II.

## Count III - Conversion

In Count III, Lee alleges that Lind-Waldock converted the futures contracts in his account with Lind-Waldock. To state a claim for conversion, Lee must allege: (1) a right in the property; (2) the right to immediate, absolute, and unconditional possession of the property; (3) defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the property; and (4) a demand for possession. See, e.g., Ruiz v. Wolf, 621 N.E.2d 67, 68 (Ill. App. 1st Dist. 1993). In its motion, Lind-Waldock argues that: (1) the futures contracts that are at the heart of this lawsuit are not property that is susceptible of being converted; (2) Lee did not have the right to immediate, absolute, and unconditional possession of the property; and (3) Lind-Waldock's assumption of control, dominion, or ownership was legitimate.

Lind-Waldock's first argument is easily rejected at this stage of the proceedings. It cites only generally, without even a page reference, to Nagel v. ADM Investor Servs., Inc., 65 F. Supp. 2d 740 (N.D. Ill. 1999) (Easterbrook Cir. J, sitting by designation), in support of its position that futures contracts are not personal property. While Judge Easterbrook's explanation of hedge-to-arrive contracts, futures contracts, and forward contracts – especially how they relate to Commodity Exchange Act – is instructive as an introduction to the commodities market, it is not helpful in determining whether Lee's interests in certain futures were personal property that could be converted. If anything, the Nagel case undermines, rather than supports, Lind-Waldock's position. See id. at 751. Judge Easterbrook's statement there suggests that the futures contracts are assets that can be converted. Id. (a futures transaction "does not involve a sale *of the commodity*. It involves sale *of the contract*.") (citations omitted).

Lind-Waldock also argues that Lee did not have the right to immediate, absolute, and unconditional possession of the property and that its assumption of control, dominion, or ownership

5

was legitimate. The basis for both of these assertions is that Lee pledged[2] all of the assets in his account to Lind-Waldock and allowed Lind-Waldock to use the assets as security for any obligations that Lee incurred. Lind-Waldock, though, assumes that since Lee "pledged" his assets to it, he cannot have the right to possession. But, it has neither cited any authority for this position, nor sought to explain the meaning or legal significance of the term "pledge" in this context. Lind-Waldock's position assumes that it had the right to liquidate Lee's assets to satisfy the margin call. Lee, however, disputes this position and has plead the opposite – namely, that Lind-Waldock did not have the right to act as it did in liquidating his futures contracts. Under these circumstances, the Court DENIES Lind-Waldock's motion to dismiss Count III.

### Count IV - Breach of Contract

Lee's fourth count alleges that by liquidating certain of his contracts to meet a margin call without first contacting him, it breached its contract with him. The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. See, e.g., Gallagher Corp. v. Russ, 721 N.E.2d 605, 611 (1999). Lind-Waldock says there was no breach because it was entitled, under the terms of their agreement with Lee to liquidate his accounts at its sole discretion.

This Court gives effect to the intent of the parties when interpreting a contact. See In re Doyle, 581 N.E.2d 669 (Ill. 1991). To do so, the Court first looks to the contract language. See, e.g., Pepper Constr. Co v. Transcontinental Ins. Co., 673 N.E.2d 1128, 1130 (Ill. App. 1st Dist. 1996). The Court will enforce a contract according to its terms when they are plain and unambiguous. See, e.g., Church v. General Motors Corp., 74 F.3d 795, 798 (7th Cir.1996). If contract terms are ambiguous, parol evidence is admissible to determine the intent of the parties. Pepper Constr. Co.

---

[2] The customer agreement used the term "pledge," but does not define the term.

6

v. Transcontinental Ins. Co., 673 N.E.2d 1128, 1130 (Ill. App. 1st Dist. 1996). The interpretation of ambiguous contract terms is a question of fact. See, e.g., Quake Constr. Inc. v. American Airlines, Inc., 565 N.E.2d 990, 994 (Ill. 1990).

The parties focus on the fifth paragraph of the customer agreement. Paragraph five pertains to the instances when Lind-Waldock has authority to trade on Lee's account without specific direction from him. According to Lind-Waldock, this provision gives it the right to liquidate Lee's account whenever, in its sole discretion, it deemed it "necessary or advisable." Lee, on the other hand, says that the "necessary or advisable" liquidation provision is limited by the provision that precedes it. In other words, according to Lee, Lind-Waldock could have only invoked this provision if his account either had zero equity or was in deficit, or if Lee was "unavailable."

Lee's reading of this provision is not supported by the plain language. Lee focuses on one instance where the agreement authorizes Lind-Waldock to liquidate his positions – if the account balance falls below zero. Another instance, though, is when Lind-Waldock deems it necessary or advisable for its own protection. These two provisions are not tied together. In fact, the contract says "whenever" Lind-Waldock "deems it necessary or advisable" to liquidate these positions, it is contractually entitled to do so. The zero-balance limitation does not limit the later provisions of that paragraph. Thus, Lind-Waldock's power to liquidate Lee's account was not limited to instances where his account balance fell below a zero.

Lee's real gripe seems to be that the Lind-Waldock never deemed it "necessary or advisable" to liquidate these positions. He says they liquidated his account in bad faith. Illinois law implies a covenant of good faith and fair dealing in every contract. See Capital Options Investments, Inc. v. Goldberg Brothers Commodities, Inc., 958 F.2d 186, 189 (7th Cir. 1992) (citations omitted). "When one party to a contract is vested with contractual discretion, it must exercise that discretion

reasonably and with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent the reasonable expectations of the parties." Interim Heath Care of N. Ill. v. Interim Health Care, Inc., 225 F.3d 876, 884 (7th Cir. 2000) (citations omitted). Lee says that Lind-Waldock never determined whether it was "necessary or advisable" to liquidate his positions. Lee doesn't have to prove his case at this stage. And whether he can is irrelevant to the disposition of this motion. Lee alleged bad faith liquidation of his account. Lind-Waldock's authority is broad, but not limitless. At this stage, the Court cannot say that Lee would be unable to prove any set of facts consistent with his complaint that would entitle him to relief. For this reason, the Court DENIES Lind-Waldock's motion to dismiss Count IV.

## Count V - Recission

In his fifth count, Lee says that he is entitled to rescind his contract with Lind-Waldock. The right recission can arise by operation of law, express or implied agreement of the parties, or from the conduct of one of the parties. See Bowser, Inc. v. Hamilton Glass Co., 207 F.2d 341, 343 (7th Cir. 1953). Fraud justifying an award of damages would also support the remedy of rescission. See, e.g., Welch v. Brunswick Corp., 294 N.E. 2d 729, 732 (Ill. App. 1st Dist. 1973) rev'd in part on other grounds by S.T. Enterprises, Inc. v. Brunswick Corp., 315 N.E.2d 1 (Ill. 1974). Where a contract is procured through fraud, e.g., Wiebrecht v. Shapiro, 301 N.E.2d 293 (Ill. 1973), misrepresentation, Douglass v. Treat, 92 N.E. 976 (Ill. 1910), or breach of a confidential relation, Swiney v. Womack, 175 N.E. 419 (Ill. 1931), rescission is available as a remedy.

Lee is not entitled to recission. Lee says that the way that the contract was written was fraudulent. Specifically, he argues that by overshadowing a very broad discretionary liquidation provision with a more limited provision that was typed in all capital letters, Lind-Waldock fraudulently induced him into the agreement. But Lee has not plead the elements for fraud. He has

also failed to point to any case supporting his true position – that a breach of the covenant of good faith and fair dealing – is a basis for recission. Consequently, the Court GRANTS Lind-Waldock's motion to dismiss Count V.

### Count VI - Commodity Exchange Act

In his sixth count, Lee says that Lind-Waldock violated the Commodity Exchange Act, 7 U.S.C. § 1 et seq. "The anti[-]fraud provision by its terms makes it unlawful for any person to deceive or defraud any other person in connection with any futures contract." Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Curran, 456 U.S. 353, 389 (1982) (citing 7 U.S.C. § 6b). Section 4b makes it illegal:

> (A) to cheat or defraud or attempt to cheat or defraud such other person;
>
> (B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;
>
> (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person . . ..

7 U.S.C. § 6b. In sum, "Section 4b of the CEA imposes liability on commodities brokers for misrepresentations and omissions of material facts, as well as for unauthorized trading." Baghdady v. Robbins Futures, Inc., No. 97 C 8794, 1999 WL 162789 (N.D. Ill. Mar. 12, 1999) (citing Cange v. Stolter and Co., 826 F.2d 581, 589 (7th Cir. 1987) (footnote omitted)).

Liability for fraud-based claims under Section 4b is modeled on common-law fraud. See, e.g., Indosuez Carr Futures, Inc. v. Commodity Futures Trading Comm'n, 27 F.3d 1260, 1264 (7th Cir. 1994); Nanlawala v. Jack Carl Assoc., Inc., 669 F. Supp. 204, 206 (N.D. Ill. 1987) (citation omitted). An Illinois common law fraud claim is based on: (1) defendant's false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the

9

plaintiff rely on the statement; (4) plaintiff's actual reliance on the statement; (5) the reliance's reasonableness; and (6) plaintiff's damages as a result. See, e.g., TRW Title Ins. Co. v. Security Union Title Ins., Co., 153 F.3d 822, 827 (7th Cir. 1998) (citations omitted). In the Seventh Circuit, though, the standard does not translate completely. For Section 4b fraud claims, the fifth element is eliminated. In other words, it does not matter whether the plaintiff's reliance was reasonable. See Indosuez, 27 F.3d at 1265.

By contrast to fraud-based Section 4b claims, unauthorized-trading claims do not require fraudulent intent. See Silverman v. Commodity Futures Trading Comm'n, 549 F.2d 28, 32-33 (7th Cir. 1977). "Commodities brokers can become liable for unauthorized trading under Section 4b merely by executing trades without the customer's permission." Baghdady, supra, at *4 (citing Silverman, 549 F.2d at 32-33). And, even where a broker has discretionary authority to trade, the broker can be liable under Section 4b for trading contrary to the customer's objectives. See Cange, 826 F.2d at 589; Dohmen-Ramierez v. Commodity Futures Trading Comm'n 837 F.2d 847, 857 (9th Cir. 1998).

Lee's complaint does not state a claim for a Section 4b violation on a fraud-based theory, but it survives Lind-Waldock's motion to dismiss based on the unauthorized-trade theory.[3] As noted previously with respect to Lee's breach-of-contract claim, he has alleged that Lind-Waldock executed trades without making a good-faith inquiry as to whether such trading was necessary or advisable for its protection. If Lee proved that Lind-Waldock liquidated took such action without good faith, this would amount to unauthorized trading. Although Lee gave Lind-Waldock a great

---

[3] To the extent that Lee's complaint could be read to attempt to state an excessive speculation claim under Section 4a, see Amend. Compl. at ¶ 70, he lacks a private right of action to bring such a claim. See, e.g., In re Soybean Futures Litigation, 892 F. Supp. 1025, 1042 (N.D. Ill. 1995).

deal of discretion with respect to his account, he did not authorize trades made without a good-faith assessment of necessity or advisability. The Court, therefore, DENIES Lind-Waldock's motion to dismiss Count VI.

<u>Mutual Assignment and Indemnification Company</u>

Lind-Waldock moves to dismiss Mutual Assignment as a party because it lacks any interest in this suit. According to Lee, Mutual Assignment's interest stems from his purported assignment of the contract that he made with Lind-Waldock. That contract, however, expressly and unambiguously states that it may not be assigned. Since neither Lee nor Mutual Assignment have plead any interest outside of this invalid assignment, the Court DISMISSES Mutual Assignment as a party.

**Conclusion**

For the reasons stated in this memorandum opinion and order, the Court GRANTS Lind-Waldock's motion to dismiss as to Count I (Action to Perpetuate Testimony), Count II (Breach of Fiduciary Duty) and Count V (Recission), but DENIES the motion as to Counts III (Conversion), Count IV (Breach of Contract), and Count VI (Commodity Exchange Act).

Enter:

_David H. Coar_
David H. Coar
United States District Judge

Dated: AUG 3 1 2001

11